UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                          :
                                     Docket #13cr268
UNITED STATES OF AMERICA,        : 1:13-cr-00268-JMF

                Plaintiff,       :

   - against -                   :

ALIMZHAN TOKHTAKHOUNOV, ANATOLY  :
GOLUBCHIK, et al.,                   New York, New York
                                 : April 16, 2013
                Defendants.
------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE JAMES C. FRANCIS,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

```
For the United States    U.S. ATTORNEY'S OFFICE
     of America:         SOUTHERN DISTRICT OF NEW YORK
                         BY:  HARRIS FISHMAN, ESQ.
                              JOSHUA NAFTALIS, ESQ.
                         One Saint Andrew's Plaza
                         New York, New York 10007
                         (212) 637-2000


For the Defendant        LAW OFFICE OF MICHAEL FINEMAN, ESQ.
Trincher:                BY:  MICHAEL FINEMAN, ESQ.
                         225 Broadway
                         New York, New York 10007
                         (212) 233-4500




Transcription Service:   Carole Ludwig, Transcription Services
                         141 East Third Street #3E
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Fax:  (212) 420-6007
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

APPEARANCES cont'd:


For the Defendant          COOLEY, LLP
    Golubchik:             BY:  JONATHAN BACH, ESQ.
                           1114 Avenue of Americas
                           New York, New York 10036
                           (212) 479-6470

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1        THE CLERK:   U. S. v. Anatoly Golubchik and Vladim

2   Trincher.  Counsel, please state your name for the record

3   starting with the government.

4        MR. HARRIS FISHMAN:   Good afternoon, Your Honor,

5   Harris Fishman and Josh Naftalis on behalf of the Government,

6   joined at counsel table by Special Agent Rob Hanratty and a

7   paralegal with the United States Attorney's Office, Colleen

8   Dyer.

9        HONORABLE JUDGE FRANCIS (THE COURT):   Good

10  afternoon.

11       MR. MICHAEL FINEMAN:   Michael Fineman on behalf

12  of Mr. Trincher, 225 Broadway, New York, New York.  Good

13  afternoon, Your Honor.

14       THE COURT:  Good afternoon.

15       (Pause in proceedings)

16       MR. JONATHAN BACH:   I'm sorry, Judge.

17       THE COURT:   That's all right.  Want to introduce

18  yourself?

19       MR. BACH:   Jonathan Bach on behalf of Anatoly

20  Golubchik.

21       THE COURT:   Good afternoon.  Gentlemen, I'm Judge

22  Francis.  The purpose of this proceeding is to inform you of

23  certain rights that you have, to inform you of the charges

24  against you, consider whether counsel should be appointed

25  for you, and to decide under what conditions you should be

1  released.  Could I have the time and day of arrest, please.

2          MR. FISHMAN:   Your Honor, both defendants were

3  arrested at approximately 6 a.m. this morning.

4          THE COURT:   Gentlemen, you have the right to

5  remain silent.  You're not required to make any statements.

6  Even if you have made any statements to the authorities, you

7  need not make any further statements.  Anything that you do

8  say can be used against you.

9          You have the right to be released, either

10  conditionally or unconditionally, pending trial unless I

11  find that there are no conditions that would reasonably

12  assure your presence in court and the safety of the

13  community.

14          You have the right to be represented by counsel

15  during all court proceedings, including this one, and during

16  all questioning by the authorities.  If you cannot afford an

17  attorney I'll appoint one today to represent you, but I note

18  that you have retained counsel.

19          Mr. Fishman, is this on for arraignment as well?

20          MR. FISHMAN:   Your Honor, it's not on for

21  arraignment.

22          THE COURT:   Thank you.

23          MR. FISHMAN:   And I should add, Your Honor, none

24  of the matters in this case have been referred for

25  arraignment.

1              THE COURT:    Right.   Gentlemen, you've each been

2   charged in six counts in this indictment and, Mr. Golubchik,

3   you've also been charged in a seventh.   You've both been

4   charged in count one, which charges conspiracy to engage in

5   racketeering in violation of Title 18 of the United States

6   Code, Section 1962(d) and you've also been charged in count

7   two, which charges racketeering in violation of Title 18 of

8   the United States Code, Section 1962(c).

9              With respect to each of those counts you would be

10  subject to a term of imprisonment of up to 20 years, a term

11  of up to 3 years supervised release, a fine of up to

12  $250,000 and a $100 special assessment.

13             You've also each been charged in count five, which

14  charges bookmaking in violation of Title 18 of the United

15  States Codes, Section 1955, and internet gambling, that's

16  count six, internet gambling in violation of Title 31 of the

17  United States Code, Sections 5363 and 5366.

18             For each of those counts you would be subject to a

19  term of imprisonment of up to five years, a term of up to

20  three years supervised release, a fine of up to $250,000,

21  and a $100 special assessment.

22             You also have each been charged in count seven,

23  which is a charge of money laundering conspiracy in

24  violation of Title 18 of the United States Code, Section

25  1956(h).   That charge carries a term of imprisonment of up

1    to 20 years, a term of up to 3 years supervised release, a

2    fine of up to $500,000, and a $100 special assessment.

3              You've also each been charged in count eight,

4    which charges a conspiracy to commit extortion in violation

5    of Title 18 of the United States Code, Section 894.  If

6    convicted on that count, you would be subject to a term of

7    imprisonment of up to 20 years, a term of up to 3 years

8    supervised release, a fine of up to $250,000, and a $100

9    special assessment.

10             And Mr. Golubchik, you've also been charged in

11   count 18, which is also a money laundering conspiracy in

12   violation of Title 18 of the United States Code, Section

13   1956(h).  And again, on that count the exposure would be up

14   to 20 years imprisonment, up to 3 years supervised release,

15   a fine of up to $500,000, and a $100 special assessment.

16             Mr. Fineman, have had an opportunity to review the

17   indictment with Mr. Trincher?

18             MR. FINEMAN:   And do you waive its public

19   reading?

20             THE COURT:   And Mr. Bach, have you had an

21   opportunity to review the indictment with Mr. Golubchik?

22             MR. BACH:   Yes, I have, Your Honor.

23             THE COURT:   And do you waive its public reading?

24             MR. BACH:   Yes, I do.

25             THE COURT:   Does the Government have bail

1  recommendations?

2          MR. FISHMAN:   Your Honor, for both defendants the

3  Government seeks detention.

4          THE COURT:   Mr. Fineman, do you wish to

5  (inaudible) at this time?

6          MR. FINEMAN:   Yes, Your Honor.

7          THE COURT:   Hang on a second, we'll let the

8  Government go first.   You may proceed.

9          MR. FISHMAN:   Your Honor, shall I address Mr.

10 Trincher first?

11         THE WITNESS:   Yes.

12         MR. FISHMAN:   Your Honor, Mr. Trincher is the

13 leader of, well, is the leader, along with Mr. Golubchik and

14 Mr. Tokhtakhounov, of this international money laundering,

15 sports gambling, and extortion ring.   Mr. Trincher operated

16 out of the Trump Tower in New York City from his apartment.

17 He oversaw one of what must be the world's largest sports

18 books, catering primarily to millionaires and billionaires

19 across the globe who place exceedingly large bets, often

20 hundreds of thousand of dollars on sporting events,

21 including soccer matches and NBA basketball games and

22 baseball games.

23         To insure payments from the abroad customers they

24 had the presence of Tokhtakhounov, also known as Taiwanchik,

25 who has described in the indictment is a Vor, a

1  (indiscernible), the highest level of Russian organized

2  criminal.  Someone who acts as protection, as a roof

3  (phonetic) and insures payment through threats, either

4  explicit or implicit of physical harm or harm to property.

5          Indeed, during the course of this investigation,

6  Mr. Vladim Trincher was on one occasion intercepted speaking

7  with a customer of the gambling operation who owed a debt of

8  $50,000.  And in that conversation Mr. Trincher made

9  reference to an enforcer of his operation, an individual

10  named Maxin (phonetic) who he threatens the customer that

11  Maxin would come and find him, would come and find the

12  money, and that he should be careful, lest he be tortured,

13  and lest he wind up underground.

14          An enormous concern of the Government is the

15  defendant's flight risk.  He has substantial ties overseas

16  in the former Soviet Union, in Israel.  He travels

17  frequently and I think highlighting the financial risk, the

18  flight risk, is the financial assets and the financial

19  wherewithal that Mr. Trincher and Mr. Golubchik have shown

20  during the course of this conspiracy.  They have laundered

21  together easily more that $50 million from the former Soviet

22  Union through six or seven shell companies that they have

23  operated in Cyprus, then into the United States.

24          And once into the United States they have

25  occasionally laundered it through additional shell

1   companies, which I note appear to be listed as, in one

2   instance, an employer for Mr. Golubchik, or invest them in

3   various investments such as real estate or hedge funds, such

4   that they have thoroughly washed the money.  So when the

5   money comes out, it's now coming out as a real estate

6   payment or a hedge fund payment.

7          But the point here being it's tens of million

8   dollars overseas that they've been able to control.  And the

9   Government is exceedingly concerned that Mr. Trincher, if

10  released today no matter what the conditions, we'll never

11  see him again.  He's facing a maximum of 90 years

12  imprisonment on these charges.  The evidence against him is

13  overwhelming.  It includes three months, I believe, or four

14  months of wiretaps on one of his cell phones, approximately

15  the same duration of wiretaps on one of Mr. Golubchik's

16  phones.

17         The wiretap conversations include intercepts of

18  Mr. Trincher communicating directly with the Vor in Russia,

19  Mr. Tokhtakhounov.  Mr. Trincher and Mr. Golubchik

20  communicating with their key money launderers in the United

21  States, Slava Greenburg and Michael Sall.  And that's

22  principally the Government's reasons, Your Honor.

23         This is someone who has shown an innate ability to

24  trick and defraud the American government by moving large

25  amounts of money into the United States through various

1   shell companies.  These transactions are almost always

2   labeled as equipment transfers, or something else, not what

3   they really are.  If they're starting out as gambling

4   payments then they're just coming in as money being paid.

5            Even today at Mr. Trincher's arrest at his five,

6   six million dollar apartment in Trump Plaza which was

7   clearly bought with gambling proceeds in 2009.  Even today

8   in his apartment was found I believe approximately $75,000

9   in cash and $2 million in Bellagio chips, which is

10  significant, because chips are a frequent means of

11  laundering money for members of this enterprise, both

12  domestically and internationally.  By the chips being given

13  to by someone else at the casino, you then can bring the

14  chip into the casino, whether domestically or

15  internationally.  Because it's plastic, you can get it on a

16  plane without be detected, and then exchange that for money.

17  It is tax-free income at your hands, essentially.

18            And so, Your Honor, it's for all these reasons

19  that the Government believes detention is appropriate.

20            THE COURT:   Thank you.

21            MR. BACH:   Judge, I'd like to argue first.  I

22  don't know if he was addressing both defendants.

23            MR. FISHMAN:   I was addressing just Mr. Trincher.

24            MR. BACH:   Okay.

25            THE COURT:   Fine.

1          MR. FINEMAN:   Your Honor, as you are well aware,

2     the standard for determining (inaudible) for a bail package

3     is if released the defendant that would insure the

4     defendant's return to court.

5          Under these sort of circumstances, Your Honor, my

6     client has (inaudible) in the United State since 1989.  As

7     the U.S. attorney has mentioned, he owns his property, it's

8     a valuable property, but we deny the allegation that the

9     source of the money that was purchased.  My client is a

10    professional poker player.  He's been (inaudible) throughout

11    the United States and the world as a professional poker

12    player and has won a tremendous amount of proceeds as in

13    that occupation, which he's paid taxes for, he's declared as

14    income.  There's no question about the source of the funds

15    that were used to purchase this real estate here in New York

16    County as well as real estate purchased in Las Vegas.

17         My client's married and his wife is here in the

18    courtroom.  I submit to Your Honor that a bail package

19    involving some much less restrictive methods, such as home

20    where the client is monitoring and a certain amount of cash

21    alternative in addition to a personal recognizance bond

22    signed by another financially sound (inaudible) should be

23    more than sufficient to require my client to appear in court

24    as necessary.

25         The U.S. Attorney's Office, while they spoke of

1  significant assets overseas, they didn't actually state any

2  reason why this court would believe that my client would

3  become, stay and face these charges or flee the jurisdiction

4  of this court.  My client's been residing in New York City

5  in excess of nine years, and with his wife, who is a

6  homemaker.

7          There's absolutely no reason to believe that my

8  client wouldn't return to court as required under any bail

9  package that will be (inaudible).  Specifically, under these

10  set of circumstances it's my understanding that in similar

11  cases, courts have found that home confinement with

12  monitoring, in addition to some additional security, as

13  being sufficient to secure a person's attendance.  I believe

14  that under the (inaudible) in this case it would be

15  appropriate.

16          THE COURT:  Mr. Fishman?

17          MR. FISHMAN:  Your Honor, just a couple of

18  points.  One, his home is in the -- the Trump Tower home

19  which is named in the indictment is in the process of being

20  seized.  And it's also the property from which he ran his

21  illegal business.  As to the suggestion that Mr. Trincher

22  bought this home with poker earnings, a public source review

23  of Mr. Trincher's poker playing, which he has played poker

24  in tournaments, reveals one tournament, I believe in 2010,

25  2011, in which he won approximately a million dollars.

1          There is no other record of him at any of the
2  number of tournaments that get a -- much publicity in this
3  country and internationally of him ever earning anything
4  substantial.  Indeed, during the months that we were up on
5  the wiretaps, aside from him playing occasional backgammon
6  games with his friends, the only significant poker game he
7  played was at an illegal poker game at the Plaza Hotel, that
8  was organized by, among others, his son, Eugene Trincher,
9  who is charged in this indictment with running an illegal
10 poker game in which he won a couple of hundred thousand
11 dollars of which was completely illegal profits.

12          I just want to paint as full a picture as I can of
13 the money Mr. Trincher has abroad.  And looking at the
14 Pretrial Services report, I note that it lists under assets,
15 $5 million for residents and nothing else.  It states that
16 as far as his employment, he's employed as a money investor,
17 and has been doing this type of work for the past ten years.

18          He reports that he has made approximately 1.3
19 million in the last year, although again, no bank accounts
20 are listed, nothing is listed -- just this $5 million asset,
21 the apartment, and no liabilities are listed.

22          Mr. Trincher every day was accepting tens of
23 thousands if not hundreds of thousands of sports bets for
24 his operations or directing his bookies in the Ukraine, in
25 Moscow, or people using the various online gambling websites

1   that he used, to cause bets to be placed.

2       And again, the sophisticated nature of the money

3   laundering scheme here, the way it worked would be setting

4   up loan agreements with the Russian clients that had some

5   bogus purpose.  On the one end of the Russian loan -- of the

6   loan agreement was a Russian client usually creating a shell

7   company of their own.

8       They then loaned the money, typically half a

9   million dollars, to one of their Cyprus shell companies --

10   Dockside, North side, Lichen, Toehold, Jet way, Maple Brook

11   -- all of these companies since 2006 have operated solely to

12   launder their money into the United States.

13       And so the money would come from Russia under a

14   loan agreement to Dockside.  There's no evidence these loans

15   were ever repaid because they weren't loans; they were

16   gambling payments.

17       Then the money would come either in a loan

18   agreement to Villa Nova Properties, another company they

19   used to loan money, or it would come directly to Mr.

20   Trincher, directly to Mr. Golubchik, but millions and

21   millions of dollars.

22       Now we don't know precisely how much money there

23   is hidden all over Russia or the Ukraine or Cyprus for Mr.

24   Trincher, but all we can rest assured is it's a lot of

25   money.  He's on the phone all the time talking to people in

1   Kiev, Ukraine about tax transactions of hundreds of

2   thousands of dollars.  There is every incentive for him to

3   leave, to be with his brother in the Ukraine.  And Your

4   Honor, may I just have one moment?

5           And Your Honor, I think also the allegation of

6   extortion in this case changes the burden that was being

7   described by defense counsel, being that is a crime of

8   violence.  And this is not the normal bail proceeding where

9   the burden rests on the Government, it's a rebuttable

10  presumption.  And in this case, with this defendant's --

11  with this defendant facing RICO charges, his home here is

12  subject to forfeiture, he has laundered over $50 million

13  from outside this country through Cyprus and the former

14  Soviet Union, this defendant poses an immense flight risk

15  that I respectfully suggest even in a normal context he

16  would not be a good candidate for bail.  But under the

17  rebuttable presumption, I don't think defense counsel has

18  done anything to rebut that presumption and respectfully, I

19  don't think he could.

20          This defendant is facing likely a long, long, long

21  time in jail in a United States prison and there's every

22  reason for him to want to leave.

23          THE COURT:   Thank you.  Mr. Fineman?

24          MR. FINEMAN:   Your Honor, without rehashing all

25  the things that the U.S. Attorney has mentioned, his

1   brother, my client's brother is not living in Ukraine.  He

2   recently immigrated to the United States, so we just want to

3   get that out.  He has a blood relative here in New York

4   along with some other family members, his wife lives here in

5   New York.  His sons that are live in California  here in the

6   United States.  So he's not a (inaudible) flight risk,

7   that's first of all.

8          Second of all, I spoke to my client and he's been

9   in numerous tournaments.  He's won a tremendous amount of

10  money and he's sanctioned tournaments in Las Vegas.  He even

11  owns a home in Las Vegas.  (Inaudible) he's nationally

12  ranked as a poker player.  So notwithstanding the fact that

13  the Government (inaudible) so (inaudible) publicly known

14  tournament.  My client has (inaudible) he obviously denies

15  the allegations.  So it's easy for the U.S. Attorney's

16  Office to say what they intend to prove at a bail hearing.

17  (inaudible) if there actually was a fear of flight.

18          THE COURT:   I have a question for you which is

19  how do you reconcile the amount of money that he has turned,

20  including, according to the Pretrial Services report, $1.3

21  million last year and the only asset being the home.

22          MR. FINEMAN:   Your Honor, my client indicates

23  that he has a home here in New York, he has property in Las

24  Vegas, he has several bank accounts in which money exists.

25  So it's not as if he has no assets.  He has potential

1   assets.

2          THE COURT:   And how did they not make it into the

3   Pretrial Service report?

4          MR. FINEMAN:   I wasn't present during the

5   Pretrial Services.  (Inaudible) was interviewed by them but

6   I can't vouch for what was said and what wasn't said during

7   the interview.

8          MR. FISHMAN:   Your Honor, the fact remains there

9   are not assets listed in the Pretrial Service report and

10  also, I would just say as part of the Government's

11  investigation, we have Mr. Trincher's tax returns.  And if

12  he is the successful poker player that his lawyer says he

13  is, he has been committing massive tax fraud over the last

14  five years because he certainly isn't declaring any of those

15  winnings.

16         That is an excuse, that is a lie, just like the

17  lie that says he's a money investor.  The Government

18  proffers to the Court and the grand jury found probable

19  cause to find that this defendant runs a sports gambling

20  business, is the leader of a RICO enterprise.  And the proof

21  that underlies it is the overwhelming e-mail and wiretap

22  proof that everyday this person does not run any business

23  other than his illegal gambling business which uses threats

24  of violence to collect its money, and uses sophisticated

25  laundering techniques through Cyprus, which we all know what

1 the situation at Cyprus is now, due in large part to the

2 money laundering that's occurred in that country.

3          And these sophisticated money laundering

4 techniques the goes through Cyprus into the United States to

5 collect his illegal earnings.  And that's what he is, that's

6 what he's done, that's why he's facing the penalties he's

7 facing, and that's why, if giving him the opportunity, the

8 Government believes he will not come back to court.

9          THE COURT:   Mr. Fineman, how do we deal with the

10 tax returns.

11          MR. FINEMAN:   Your Honor, my client said he

12 reported (inaudible) on his tax return last year.

13 (inaudible). I'm not sure where the U.S. Attorney's coming

14 up with that he's (inaudible) tax (inaudible).  He reports

15 substantially on the (inaudible).

16          MR. FISHMAN:   Your Honor, I'm happy to respond to

17 that.  The two points about the tax returns.  One, much of

18 the income that is claimed in the tax returns is via the

19 illegal money laundering vehicles, such as Villa Nova

20 Properties, S&T Capital.  So the money that is being claimed

21 -- or another example, Skyway, a plane company in Florida

22 that they used until about 2006, more like 2007, 2008 to be

23 their principal money laundering company before they changed

24 it to Villa Nova Properties.  So much of the income that is

25 claimed is claimed through those companies.  It's also

1   offset by a number of losses.

2          Generally speaking, over the last five years, Mr.

3   Trincher has claimed either losses, or close to losses, or

4   negligible gains.  He probably, over the last five years,

5   has claimed total gain in the range of about a million and a

6   half dollars, maybe, over the last five years which

7   certainly doesn't explain how he could spend $5 million in

8   cash on his apartment in Trump Tower.  And what it certainly

9   doesn't back up, unless I just misunderstood what defense

10  counsel argued first, was the idea that he's making all this

11  money from poker tournaments.

12         So what the Government is proffering is that other

13  than one substantial poker earning that was reflected in

14  taxes, anything else has been negligible.  There's never

15  been significant on anything shown in poker earnings.

16              THE COURT:  One moment.

17              (Pause in proceedings.)

18              THE COURT:  On the basis of the indictment, the

19  Pretrial Service report, and the proffers of counsel I find

20  that the Government has sustained its burden of

21  demonstrating that the defendant presents a risk of flight,

22  such that there are no conditions that would reasonably

23  assure his return to court.

24         Whether or not the Government benefits from the

25  presumption here, it's sustained its burden of showing that,

1  first of all, that the defendant faces substantial term of

2  incarceration if convicted and that the evidence against him

3  is quite strong, creating an incentive to flight.

4        The Government's also demonstrated that he has the

5  means to flee, were he to choose to do so, given the

6  substantial income that he has received, not all of which

7  has necessarily been identified by the Government.

8        He has had contacts overseas.  Whether his brother

9  is now in this country, I think is not determinative.  Among

10 other things, he is a dual citizen with Israel so there are

11 places where he could flee if he so chose.

12       I'm also disturbed by the inconsistencies between

13 the Pretrial Services report, the tax returns, and the

14 purported sources of Mr. Trincher's income.  I think that

15 that has certainly not been explained to my satisfaction to

16 overcome the proffer that has been made by the Government.

17       So for those reasons I'll order him detained

18 pending trial.

19       I will hear from the Government on Mr. Golubchik.

20       MR. BACH:   Judge, we'll reserve.

21       THE COURT:   Very well.  On that basis I'll order

22 Mr. Golubchik detained without prejudice in any future

23 application.  Is there a conference scheduled with a

24 district judge?

25       MR. FISHMAN:   Yes, Your Honor, Judge Furman has

22

1   set a conference for this Friday at 1 p.m.

2              THE COURT:   Thank you all.

3              MR. FISHMAN:   As I said, as I indicated, the

4   discovery in this case is going to be voluminous.  The

5   Government has already made extensive efforts to compile

6   discovery in advance of these arrests and is hopeful that it

7   can even be making discovery before the conference on

8   Friday, and is certainly at the disposal of defense counsel

9   to discuss the case in advance of then.

10             With that in mind, the Government would ask that

11  time be excluded under the Speedy Trial Act from now until

12  Friday.

13             THE COURT:   Mr. Bach, is that consented to?

14             MR. BACH:   Yes.

15             THE COURT:   Mr. Fineman?

16             MR. FINEMAN:   No objection, Your Honor.

17             THE COURT:   Very well, the time is excluded.

18             MR. FISHMAN:   Thank you, Your Honor.

19              (Whereupon the above matter was adjourned.)

20

21

22

23

24

25

23

## C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, United States of

America v. Tokhtakhounov, et al., Docket #13cr268, was

prepared using digital electronic transcription equipment

and is a true and accurate record of the proceedings.




Signature_____

Date:  April 25, 2013