Maximilian A. Grant
Direct Dial: 1.202.637.2267
max.grant@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

February 27, 2020

**VIA EMAIL**

Hon. Jesse M. Furman
United States District Court Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

>   Re:   *United States v. Tokhtakhounov, et al.,* 13-cr-268 (JMF)
>         *Latchable, Inc., et al. v. Steiner et al.,* 19-cv-7575 (AT) (KNF)

Dear Judge Furman

    Plaintiffs Latchable, Inc. ("Latch"), Local Energy Technologies, LLC ("LET"), Luke Schoenfelder, and Brian Jones (collectively, "Plaintiffs") in *Latchable, Inc., et al. v. Steiner et al.*, 19-cv-7575 (AT) (KNF) (the "Civil Case") respectfully submit this letter in opposition to the Government's request for a supplemental protective order in this case, *United States v. Tokhtakhounov, et al.*, 13-cr-268 (JMF) (the "Criminal Case"). *See* D.I. 1379. The Government's request should be denied.

    The Government asks the Court to modify a protective order that it entered ***over six years ago***. But the Government fails to meet its burden to demonstrate that a modification is warranted, under Fed. R. Crim. P. 6(e) and applicable case law. As the Government concedes and this Court recognizes, the information the Government belatedly asks the Court to protect—which is critical to Plaintiffs' claims in the Civil Case—are "Non-Title III materials" that "do[] not … implicate this Court's protective order." D.I. 1379 at 1; D.I. 1378; *see also* D.I. 1370 (describing Plaintiffs' civil RICO claims). Consequently, there is no basis for this Court to protect, or for the Defendants in the Civil Case or their law firms to withhold, such information. Indeed, regardless of whether the Court enters a supplemental protective order, Defendants and/or their law firms should be ordered to produce all non-Title III materials relating to Defendants Siegel, J. Hirsch, and N. Hirsch.

**I.   BACKGROUND**

    The background for Plaintiffs' request for relief from the Criminal Protective Order is set out in Plaintiffs' January 29, 2020 letter, with which the Court is familiar. *See* D.I. 1370. On February 5, Civil Case Defendant Noah Siegel and Criminal Case Defendants Vadim Trincher, Illya Trincher, and Hillel Nahmad responded to Plaintiffs' January 29 letter. D.I. 1373-1376. The Government responded on February 12. D.I. 1377. Two days later, on February 14, Plaintiffs requested leave to file a reply and an accompanying reply, because Plaintiffs learned for the first time from the Government's response that the criminal case files for Defendants Siegel, J. Hirsch,

and N. Hirsch contain extensive non-Title III materials that are *not covered by the Criminal Case's protective order*: "(a) emails, the contents of cellphones, documents and other evidence obtained pursuant to judicially authorized search warrants; (b) bank and other account records obtained pursuant to grand jury subpoenas; (c) tax records; and (d) certain defendants' post-arrest statements." D.I. 1377 at 6. Plaintiffs also learned that there are subsets of non-Title III materials in these files that are not even arguably grand jury materials. *See* D.I. 1377 at 4 ("(b) the other criminal discovery, *much* of which is grand jury material") (emphasis added).

On February 20, the Court denied Plaintiffs' request for relief from the Criminal Protective Order for Title III materials. D.I. 1378 at 6. But the Court recognized that, "as the Government acknowledges," "non-Title III materials" in Defendants Siegel, J. Hirsch, and N. Hirsch's discovery files "do[] not … implicate this Court's Protective Order." *Id.* at 6. The Court instructed the parties to litigate their disputes over these materials in the Civil Case. *Id.* Alternatively, the Court advised the Government to move for a protective order over such materials. *Id.* Later on February 20, the Government filed a letter requesting a supplemental protective order. D.I. 1379.[1]

## II. LEGAL STANDARDS

### A. Amending Protective Orders

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1) ("Protective and Modifying Orders"). "[W]hether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." *SEC v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001); *see also United States v. Kerik*, No. 07-cr-1027, 2014 WL 12710346, at *1 n.1 (S.D.N.Y. July 23, 2014) (noting that the holding of *TheStreet.Com* applies to criminal cases). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007), *as amended* (July 2, 2007) (holding good cause not shown); *see also United States v. Stone,* No. 10-20123, 2012 WL 137746, at *2 (E.D. Mich. Jan. 18, 2012) (denying motion for protective order). Where a party fails to show good cause as to a particular subset of documents, those documents should be disclosed. *Schiller v. City of New York*, No. 04 CIV. 7921 KMK JCF, 2007 WL 136149, at *19 (S.D.N.Y. Jan. 19, 2007).

### B. Federal Rule of Criminal Procedure 6(e)

To determine whether requested materials fall under the protections provided by Fed. R. Crim. P. 6(e), a Court must first analyze whether the disclosure will reveal "matters occurring before the grand jury." *United States v. Manko*, No. 89 Cr. 91 KMW, 1997 WL 107440, at *2 (S.D.N.Y. Mar. 11, 1997). "[M]atters occurring before the grand jury" include transcripts and can, in limited circumstances, include documents; "[h]owever, it is not the purpose of the Rule to foreclose from all future revelation … the same information or documents which were presented to the grand jury." *United States v. Interstate Dress Carriers Inc.*, 280 F.2d 52, 54 (2d Cir. 1960).

---

[1] Plaintiffs agree with the Government (D.I. 1379 at 3) that this Court is well positioned to resolve the instant disputes over non-Title III materials, rather than referring these issues back to the magistrate judge in the Civil Case.

"[D]ocuments are not cloaked with secrecy merely because they are presented to a grand jury." *United States v. Lartey*, 716 F.2d 955, 964 (2d Cir. 1983); *see also United States v. Blaszczak*, No. S1 17-CR-357, 2018 WL 1322192, at *4 (S.D.N.Y. Mar. 12, 2018) ("Rule 6(e) does not apply to disclosures of information obtained independently of the grand jury process, even if the same information might later be presented to the grand jury.") (citing *United States v. Skelos*, No. 15 CR 317 KMW, 2015 WL 6159326, at *10 (S.D.N.Y. Oct. 20, 2015)); *see also In re Grand Jury Subpoena*, 103 F.3d 234, 238 (2d Cir. 1996) (collecting cases holding same from 3rd, 4th, 5th, 6th, 7th, 10th, and 11th Circuits). Rather, documents should remain secret only if their disclosure reveals "what is said or what takes place" before the grand jury. *Interstate Dress*, 280 F.2d at 54. And "[e]videntiary materials submitted to a grand jury do not constitute 'matters occurring before a grand jury' within the meaning of Rule 6(e) when those materials are sought for disclosure for their own sake or intrinsic value." *Ferreira v. United States*, 350 F. Supp. 2d 550, 559 (S.D.N.Y. 2004) (citing *Interstate Dress*, 280 F.2d at 54)*; see also DiLeo v. Commissioner of Internal Revenue*, 959 F.2d 16, 20 (2d Cir. 1992), *cert. denied*, 506 U.S. 868 (1992) (affirming disclosure of documents subpoenaed by grand jury); *In re Regular Grand Jury*, 741 F. Supp. 1027, 1028 (E.D.N.Y. 1990) (allowing disclosure of canceled checks, accounting spreadsheets, bank records and miscellaneous notes subpoenaed by grand jury).

Even where grand jury materials are found to be subject to Rule 6(e), disclosure is proper when a requesting party shows a "particularized need" beyond mere relevance. *United States v. Carneglia*, 675 F. App'x 84 (2d Cir. 2017) (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)). The requesting party must show "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.; see also United States v. John Doe, Inc.*, 481 U.S. 102, 112 (1987).

### III. ARGUMENT

#### A. The Court Should Not Modify Or Supplement The Protective Order

The Government's request for a supplemental protective order should be denied. The Government has failed to show good cause for such an order. *See Schiller v. City of New York*, No. 04 CIV. 7921 KMK JCF, 2007 WL 136149, at *19 (S.D.N.Y. Jan. 19, 2007) ("The City has not shown good cause for the confidentiality of these deposition transcripts."); *United States v. Jones*, No. 06-CR-149, 2007 WL 4404682, at *2 (E.D. Tenn. Dec. 13, 2007) (denying request for a protective order where government failed to "make the requisite showing" of good cause).

*First*, the Government admits that its request is driven by Plaintiffs' discovery efforts in the Civil Case. See D.I. 1379 at 2. But criminal RICO indictments have long been followed by separate civil RICO litigation, including civil claims brought by the Government. *See, e.g.*, *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F. Supp. 1411, 1432 (E.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989). In fact, courts guard the viability of subsequent civil RICO claims, for example, by tolling the statute of limitations for such claims during the pendency of related criminal actions to ensure that civil litigants can "take advantage of" and "glean benefits from" the related criminal action. *Pension Fund-Mid-Jersey Trucking Indus. v. Omni Funding*, 687 F. Supp. 962, 963-64 (D.N.J. 1988); *see also Pres. Petrified Forrest v. Renzi*, 2013 WL 530574, at *3-*4 (D. Ariz. Feb. 12, 2013). Thus, Plaintiffs' claims in the Civil Case and related discovery requests do not constitute good cause for a supplemental protective order.

*Second*, the Government contends that disclosure of non-Title III materials would jeopardize its prosecution of Criminal Case Defendant Alimzhan Tokhtakhounov.  D.I. 1379 at 2-3.  Not so.  The Government represents that "the bulk of the non-Title III materials" it is concerned about are "irrelevant to Siegel and the Hirsch[e]s." D.I. 1379 at 3.  And Plaintiffs seek non-Title III materials *relating to Defendants Siegel, J. Hirsch, and N. Hirsch*.  The Government has not shown that disclosure of such materials "will work a clearly defined and serious injury" *Jones*, 2007 WL 4404682 at *2.  Furthermore, if such materials are produced in the Civil Case, the confidentiality of those materials will be guarded by that case's protective order.  *See* Civil Case, D.I. 91.  For example, the parties in the Civil Case must (i) seal any motion papers containing materials designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY, and (ii) take steps to prevent public disclosure of such materials during hearings and at trial.[2]

*Third*, the Government cites no case in which a court expands the breadth of an existing protective order as the Government requests, and its cases are inapposite.  In *United States v. Delia*, the Second Circuit found no fault in a trial court's refusal to order pretrial disclosure of the Government's rebuttal case.  944 F.2d 1010, 1017-18 (2d Cir. 1991) ("The district court did not abuse its discretion in denying Delia's unusual disclosure request").  The Court did not address whether a protective order was appropriate or should be modified.  *Id.*  The *Amodeo* case addressed whether a court could unseal previously sealed documents and make them public, i.e., the narrowing of protections.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  The *Epstein* case addressed whether a protective order should be instituted in the first instance, not whether it should be modified many years later.  *United States v. Epstein*, No. 96 CIV. 8307 (DC), 1998 WL 67676, at *2 (S.D.N.Y. Feb. 19, 1998).  And in *Smith*, a protective order was imposed due to concerns that disclosure would "(i) reveal the targets of [multiple ongoing] investigations and the suspected criminal conduct being investigated; (ii) disclose the type of evidence being collected…; and (iii) officially confirm [the identities] of the cooperating witnesses." *United States v. Smith*, 985 F. Supp. 2d 506, 532 (S.D.N.Y. 2013).  In contrast, in the Criminal Case, Defendant Tokhtakhounov is the only person who remains at large, and the Governments' investigation, the identities of criminal co-defendants and witnesses, and the types of evidence the Government has collected are publicly known.  The concerns in *Smith* are not present here.

For these reasons, the Government's request for a supplemental protective order should be denied.

### B. Regardless Of Whether The Supplemental Protective Order Is Entered, The Court Should Order That Non-Title III Materials Be Produced To Plaintiffs

The Court should order the Civil Case Defendants and/or their law firms to produce non-Title III materials relating to Defendants Siegel, N. Hirsch, and J. Hirsch.  Rule 6(e) does not

---

[2] *See* Civil Case, D.I. 91, ¶ 6.3 (strictly limiting disclosure of HIGHLY CONFIDENTIAL material), ¶ 12.3 ("Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material").  Plaintiffs have repeatedly explained that they will treat non-Title III materials produced in the Civil Case as HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY materials.  Also, as the Supreme Court noted in *Douglas Oil*, "if disclosure is ordered, the court may include protective limitations on the use of the disclosed material." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979).

LATHAM&WATKINS LLP

preclude such disclosure, and the Court can order the release of these materials under Paragraph 2 of the Criminal Protective Order, regardless of whether that order is amended. *See* D.I. 203, Criminal Protective Order ("Confidential Information may be disclosed by the defendants and/or their counsel" per "order issued by any Court"); D.I. 1379-1, Proposed Supplemental Protective Order (requesting amendment of only Paragraph 1 of the Criminal Protective Order).

### 1. *Rule 6(e) Does Not Apply To The Materials Plaintiffs Seek*

The non-Title III materials the Government has identified in Defendants Siegel, J. Hirsch, and N. Hirsch's files—emails, cell phone records, financial documents, and post-arrest statements—were not created by and will not reveal what transpired before, the grand jury. Consequently, they are not "matters occurring before the grand jury" and should be produced. *See SEC v. Everest Management*, 87 F.R.D. 100, 105 (S.D.N.Y. 1980) ("Documents produced to the grand jury do not intrinsically reveal what transpired in the grand jury room"); *Ferreira*, 350 F. Supp. 2d at 559 (same) (citing *Interstate Dress*, 280 F.2d at 54); *see also Manko*, 1997 WL 107440, at *4 ("[B]ecause Rule 6(e) does not apply to the [non-Title III materials] there is no requirement for [Plaintiffs] to show a 'particularized need'" for disclosure). Also, the fact that these materials may have been presented to the grand jury does not preclude their release. *See Lartey*, 716 F.2d at 964 (affirming disclosure of bank records because "documents are not cloaked with secrecy merely because they are presented to a grand jury.").

Furthermore, the existence of the Government's investigation and the grand jury indictment is public knowledge. This favors disclosure. *See Manko*, 1997 WL 107440 at *3 (rejecting the Government's argument that disclosure would compromise a grand jury investigation "because the subject matter of the grand jury's investigation [wa]s a matter of public knowledge"); *United States v. Liberman*, 687 F. Supp. 775, 777 (E.D.N.Y. 1988) (disclosure of bank records would not compromise grand jury process because investigation was publicly known). The Government unsealed the Criminal Case indictment in ***April 2013***, and the indictment was announced in press releases. D.I. 2; Civil Case, D.I. 1, Exs. B, D. Those disclosures described the Criminal Case Defendants' unlawful enterprises and activities, including their illegal gambling businesses, money laundering, and extortion, as did subsequent prosecutions. Thus, there is little risk that the materials Plaintiffs now seek—almost seven years later—will undermine any ongoing investigation.

Separately, any non-Title III materials that were not used in grand jury proceedings indisputably are not subject to Rule 6(e) and must be produced. *See Conte v. Cty. of Nassau*, No. CV 06-4746 (JFB) (ETB), 2009 WL 1362784, at *10 (E.D.N.Y. May 15, 2009) (ordering disclosure of "any requested documents in the possession of the [prosecutor]'s office that were not used in the grand jury proceedings") (citing *Ruther v. Boyle*, 879 F. Supp. 247, 251 (E.D.N.Y. 1995)). The Government's response to Plaintiffs' request for relief from the Criminal Protective Order indicates that Defendants Siegel, J. Hirsch, and N. Hirsch's files include such materials. *See* D.I. 1377 at 4 ("(b) the other criminal discovery, ***much*** of which is grand jury material") (emphasis added). Any non-Title III materials not used before the grand jury must be produced.

### 2. *Even If Rule 6(e) Applies, Plaintiffs Have Shown A Particularized Need For The Materials They Seek*

Even if the Court were to find that Rule 6(e) applies to some or all of the materials Plaintiffs seek (the Court should not), Plaintiffs' "particularized need" for such materials justifies disclosure.

LATHAM&WATKINS LLP

The materials Plaintiffs seek are "needed to avoid a possible injustice" in the Civil Case, "the need for disclosure is greater than the need for continued secrecy," and Plaintiffs' "request is structured to cover only material[s] so needed." *Douglas Oil*, 441 U.S. at 223.

*First*, a Court order requiring disclosure of non-Title III materials relating to Defendants Siegel, J. Hirsch, and N. Hirsch will prevent possible injustice in the Civil Case. In that case, Plaintiffs have exhausted other discovery tools, to no avail.[3] Plaintiffs served requests for production on Defendants specifically targeting the criminal activities of Defendants Siegel, J. Hirsch, and N. Hirsch. Defendants stonewalled. Plaintiffs also served subpoenas on the corporate entity that owned the bank account Defendants used to invest illicit funds in Plaintiff LET, and appear to have used for illegal gambling, HMS. Defendants' counsel stepped in to represent HMS and, to date, produced only limited hard copy bank statements from irrelevant time periods, while refusing to produce any electronic records. Plaintiffs also served a subpoena on Bank of America, which held HMS's account, notwithstanding the fact that counsel for Defendants and HMS represented that relevant bank records are no longer available. Plaintiffs further note that even though (i) discovery opened four months ago in the Civil Case and (ii) Plaintiffs moved to compel the production of relevant electronic records, Defendants have produced only 317 documents, and have failed to produce a single non-public document relating to Defendants' illegal sportsbook or their gambling operation's finances. In short, Plaintiffs have aggressively pursued, and exhausted other avenues for, the discovery they seek. But Defendants' criminal case files may be the only available sources of information that is critical to Plaintiffs' civil RICO claims, and the administration of justice in the Civil Case.

The risk that Defendants Siegel, J. Hirsch, and N. Hirsch will give testimony contradicted by their criminal case files also favors disclosure to prevent injustice. In *Douglas Oil*, the defendants' answers to interrogatories concerning price communications with competitors appeared to be inconsistent with earlier pleas of *nolo contendere*. 441 U.S. at 229. The Supreme Court agreed with the court of appeals' ruling that because "there [was] a strong inference that the grand jury materials supported the government's [price-fixing] charges," the plaintiff "showed a particularized need" for discovery of those materials, "beyond [] mere relevance." 571 F.2d 1127 at 1130-31 (9th Cir. 1978), *rev'd on other grounds*, 441 U.S. at 222-224. Here, both the criminal and civil cases involve alleged violations of the RICO statute. *See* Civil Case, D.I. 1 ¶¶ 45-51; D.I. 1377 at 1. There is a high degree of overlap between the cases' factual allegations—the civil RICO claims involve the Defendants' investment of funds derived from the unlawful activities that led to their indictment in the Criminal Case, and a conspiracy to invest the same. *See* Civil Case, D.I. 1 ¶¶ 45-51. And to date, Defendants have refused to provide meaningful discovery in the Civil Case. Defendants' obstructionist behavior appears to be designed to enable Defendants to deny in the Civil Case the very wrongdoings their criminal case files would establish. The Supreme Court blessed disclosure of grand jury materials in *Douglas Oil* to avoid this exact form of injustice. 441 U.S. at 217, 222 n.12 ("[P]articularized need arises when a litigant seeks to use

---

[3] Plaintiffs did so, but note for the Court that this is not a prerequisite. *See United States v. John Doe, Inc. I*, 481 U.S. 102, 116 (1987) ("Even if we assume that all of the relevant material could have been obtained through the civil discovery tools available … our precedents do not establish a per se rule against disclosure.").

LATHAM&WATKINS LLP

'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.' Such use is necessary to avoid misleading the trier of fact.").

*Second*, the need for disclosure of non-Title III materials relating to Defendants Siegel, J. Hirsch, and N. Hirsch is greater than the need for continued secrecy of such materials. As discussed above, the Government concedes that "the bulk of the non-Title III materials" it is concerned about are "irrelevant to Siegel and the Hirsch[e]s." D.I. 1379 at 2-3. In addition, the confidentiality of any non-Title III materials relating to Defendants Siegel, J. Hirsch, and N. Hirsch will be protected under the Civil Case protective order. Civil Case, D.I. 91.

*Third*, Plaintiffs have structured their requests to cover only the materials they need, so that "the secrecy of the[se] proceedings (may be) lifted discretely and limitedly." *United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958)). Plaintiffs' request is limited to four categories of non-Title III materials that the Government identified in Defendants Siegel, N. Hirsch, and J. Hirsch's files. Plaintiffs do not seek grand jury testimony, transcripts, minutes, affidavits, subpoenas, or search warrants. Nor do Plaintiffs seek information regarding Criminal Case Defendant Tokhtakhounov.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) deny the Government's request for a supplemental protective order, and (ii) order that Defendants and/or their law firms produce non-Title III materials relating to Defendants Siegel, N. Hirsch, and J. Hirsch—"(a) emails, the contents of cellphones, documents and other evidence obtained pursuant to judicially authorized search warrants; (b) bank and other account records obtained pursuant to grand jury subpoenas; (c) tax records; and (d) [these] defendants' post-arrest statements." D.I. 1379 at 1. Plaintiffs further request that even if the Court enters the Governments' proposed supplemental protective order, the Court still order that non-Title III materials relating to Defendants Siegel, J. Hirsch, and N. Hirsch be produced, pursuant to Paragraph 2 of the Criminal Protective Order (D.I. 203).

Thank you for your time and consideration.

Respectfully submitted,

 */s/ Maximilian A. Grant*
Maximilian A. Grant
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
Tel: (212) 906-1200
max.grant@lw.com

cc:    rrosberger@rlrpclaw.com (via email)
       grenigar@steptoe.com (via email)
       john.cambria@alston.com (via email)
       SARader@mintz.com (via email)
       Joshua.Naftalis@usdoj.gov (via email)